**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ERNESTO ORDONEZ, NARCISO ORDONEZ, )
WOJEIECH KARDIERZ, PIOTR CETNARSKI, )
ARTURO CARDOZO, FERNANDO ARMIJO, )
MIRIAM ADONO, LUCIANO SALGADO, )
JESUS FIGUEROA, JOSE RODRIGUEZ, )
JUAN MARTINEZ, JESUS LOPEZ, )
MARIA PATINO, JOSE BELTRAN, )
FIDEL GALICIA, HECTOR IRIAS, )
NARCISO CRUZ, VISMAR VICTORIA, )
SUSANA MORA, BENJAMIN MORA, )
MIGUEL VILLOSANA, DELSI ORTIZ, )
MARCIAL MENDOZA, HERMINIO GARCIA, )
and FREDY NORIEGA, )
                                    Plaintiffs, )
                                             v. )
                                          ) No. 10 C 5708
AKORAT METAL FABRICATORS, INC., )
SMITHCO FABRICATORS, INC., )
WISCONSIN TOOL AND STAMPING CO., )
JJD INDUSTRIES, INC., SHALE- )
INLAND STAMPING AND FABRICATING LLC,)
JOHN DOMBEK, JR., and )
JOHN DOMBEK III, )
                                    Defendants. )

**MEMORANDUM OPINION**

      Before the court is the motion of Shale-Inland Stamping and Fabricating LLC ("Shale") for summary judgment, which is denied for the reasons explained below.

This is a suit alleging that defendants violated the minimum-wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Plaintiffs also bring claims for violation of the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq., as well as common-law fraud and deceptive practices. Plaintiffs allege that defendants Smithco Fabricators, Inc., JJD Industries, Inc., Wisconsin Tool and Stamping Co. (to which we will refer collectively where appropriate as the "Wisconsin Tool defendants") and Akorat Metal Fabricators, Inc. managed their tool-and-die business as a unified operation and engaged in a practice of issuing paychecks drawn from accounts with insufficient funds. According to the complaint, none of those entities are now operating. Defendants John Dombek, Jr. and John Dombek III are alleged to have been principal officers of the entities and each liable as plaintiffs' "employer" under the relevant statutes. It is also alleged that defendant Shale-Inland Stamping and Fabricating, LLC ("Shale"), which purchased the assets of the Wisconsin Tool defendants on September 21, 2010, is liable as a successor to those entities for the wages owed to plaintiffs.

Shale has moved for summary judgment on the FLSA claims, Counts I and III, which are the only claims asserted against it. We will not address the undisputed facts because the motion in large part turns on an issue of law.

## **DISCUSSION**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, we construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

"The general common-law rule, designed to maximize the fluidity of corporate assets, is that a corporation that merely purchases for cash the assets of another corporation does not assume the seller corporation's liabilities." Upholsterers' Int'l Union Pension Fund v. Artistic Furniture, 920 F.2d 1323, 1325 (7th

Cir. 1990) (internal quotation marks omitted). There are exceptions to this rule. In its opening brief, Shale first cites to Illinois law, which limits successorship liability to four situations. See id. at 1325-26. Shale then states: "[S]ome cases suggest that the elements required to assert successor liability in a federal claim are slightly different than those required under Illinois law." (Shale's Mem. in Supp. of Mot. for Summ. J. at 7.) This is such an understatement that it mischaracterizes Seventh Circuit law. The Court of Appeals has explicitly stated that there is a "special federal common law doctrine of successor liability" that is a "departure from the more limited approach of the common law." EEOC v. G-K-G, Inc., 39 F.3d 740, 748 (7th Cir. 1994); see also Artistic Furniture, 920 F.2d at 1326 ("[T]he perimeters of the labor-law doctrine of successorship have not been so narrowly confined [as general common-law principles]." (quoting Golden State Bottling Co. v. NLRB, 414 U.S. 168, 182 n.5 (1973))); Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc., 59 F.3d 48, 49 (7th Cir. 1995) (noting that "successor liability under federal common law is broader" than the laws of most states). This broader successorship doctrine is designed to "vindicate important federal statutory policies." Artistic Furniture, 920 F.2d at 1326.

When a claim arising from a violation of federal rights is asserted, a plaintiff may sue the purchaser of the assets of the

violator's business even if there was a true sale and not a reorganization, provided that two conditions are satisfied: (1) the successor had notice of the plaintiff's claim prior to the acquisition; and (2) there was "substantial continuity in the operation of the business before and after the sale." G-K-G, 39 F.3d at 747-48. The Seventh Circuit has applied this federal successorship doctrine to claims brought pursuant to ERISA and the National Labor Relations Act as well as employment-discrimination claims under 42 U.S.C. § 1981, Title VII, the ADEA, and the Pregnancy Discrimination Act. See Artistic Furniture, 920 F.2d at 1326-27 (discussing cases); G-K-G, 39 F.3d at 748. We agree with plaintiffs that the reasoning of this line of cases applies with equal force to actions seeking enforcement of the FLSA. The Seventh Circuit has, in its own words, extended the federal successor-liability doctrine "to a variety of statutory contexts when the equities have so dictated," Artistic Furniture, 920 F.2d at 1327, so we have little doubt that it would apply the doctrine to a FLSA claim. Shale does not contend otherwise--at least not expressly. Rather, it argues that the factors examined under federal common law "are, in essence, analytic tools used to examine one key question: whether the asset sale was really a corporate reorganization that left ownership or control unchanged." (Shale's Mem. at 8.) In support of this argument, Shale cites two Seventh Circuit decisions that are distinguishable because they involved

the application of Illinois, not federal, law.[1]  Shale's "one key question" formulation of the inquiry is not an accurate statement of federal law.  Moreover, we reject Shale's contention that successor liability lies only where there is "ongoing harm" to plaintiffs.  (Reply at 4-5.)  It is clear that the doctrine can apply even to "pure money" cases.  See G-K-G, 39 F.3d at 748.  In its reply brief, Shale further asserts that plaintiffs "are no different than other creditors that were not paid by the Wisconsin Tool Defendants."  (Reply at 4.)  As employees, they *are* different; the entire purpose of the broad federal successorship doctrine is to protect employees from unfair labor practices.  See Artistic Furniture, 920 F.2d at 1326 (discussing the reasons why successor liability is imposed).

We will apply the federal common law rule of successor liability here.  Accordingly, the "analytic tools" we will use to determine whether Shale is liable as a successor to the Wisconsin Tool defendants are the two factors stated above--notice and substantial continuity--that have been used by the Seventh Circuit in recent cases applying the doctrine (G-K-G and Tasemkin).  Shale argues that another "element" plaintiffs must "prove," Shale's Mem. at 7-8, is that the Wisconsin Tool defendants are not currently

---

[1]  Both were diversity suits; no federal claim was involved, so the Court applied Illinois law.  See Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420 (7th Cir. 1993); Brandon v. Anesthesia & Pain Mgmt. Assocs., 419 F.3d 594 (7th Cir. 2005).

able, but were able on the date of sale, to provide relief to the plaintiffs. Earlier Seventh Circuit decisions have described this inquiry as a third factor in the successor-liability analysis, see, e.g., Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1236 (7th Cir. 1986), but based on a review of the relevant Seventh Circuit case law, we have decided that our approach will be to primarily focus on the issues of notice and substantial continuity, the factors that have been emphasized in the most recent decisions. We might also consider as a secondary factor the predecessors' ability to pay plaintiffs if we find it appropriate. "Successor liability is an equitable doctrine, not an inflexible command"; its nature is highly fact-dependent. See, e.g., Tasemkin, 59 F.3d at 49; Wheeler, 794 F.2d at 1237 ("We are not prepared to hold that absence of timely actual knowledge is a bar to successor liability in every case.").

Shale's motion essentially boils down to an argument that it would simply be unfair to impose successor liability here because it was a bona fide purchaser of the Wisconsin Tool defendants' assets in a foreclosure sale under Article 9 of the Illinois Uniform Commercial Code. The successor-liability doctrine, however, already takes into account that there may have been a true sale, and Shale fails to cite any authority for the proposition that Article 9 asset sales are a special category that is exempt from application of the doctrine. Shale argues that it was unable

to "extract concessions" from the seller, First Midwest Bank, regarding any existing or potential claims against the Wisconsin Tool defendants. (Shale's Mem. at 9.) Notably, Shale does not maintain that it was unable to take the possible liabilities into account when deciding upon the amount of its bid, or that it did not have notice of the claims. Instead, it states that it "will not engage in a debate . . . as to what extent Shale-Inland may have learned of the unpaid wage claims when it was considering purchasing the Assets" and that the issue of whether it had notice of the plaintiffs' wage claims prior to the sale is "irrelevant under the circumstances." (Shale's Mem. at 9.) To the contrary, notice is one of the two primary considerations in the successor-liability analysis. There is nothing exceptional about the circumstances here that warrants disregarding this factor.

Shale fails to persuade us that plaintiffs are precluded from recovering against it under a theory of successor liability. The remainder of Shale's motion, in which it argues that plaintiffs cannot prove successor liability, is premature. Plaintiffs have not had an adequate opportunity to conduct discovery on their claims against Shale. The discovery stay as to Shale is hereby lifted, and discovery shall proceed forthwith.

## **CONCLUSION**

For the foregoing reasons, the motion of Shale-Inland Stamping and Fabricating, LLC for summary judgment [42] is denied. A status

hearing is set for February 8, 2012 at 10:30 a.m. for a report on the progress of discovery.

DATE:     December 20, 2011

ENTER:    _____
          John F. Grady, United States District Judge